R100

AGREEMENT WITH
THE METROPOLITAN DISTRICT COUNCIL
OF PHILADELPHIA AND VICINITY
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA

THE METROPOLITAN DISTRICT COUNCIL OF PHILADELPHIA AND VICINITY, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA ("COUNCIL") and the Undersigned Employer agree that:

1. The employer shall be and is hereby, bound by all of the terms and conditions of employment contained in the collective bargaining agreement between the Council and the Interior Finish Contractors Association of Delaware Valley ("IFCA"), receipt of a copy of which is hereby acknowledged, that is effective on the date of this Agreement as well as any additions, modifications, extensions and renewals thereof between the Council and IFCA as may occur subsequent to the execution of this Agreement.

2. This agreement shall be effective as of the date set forth below and shall remain in full force and effect for the duration of the collective bargaining agreement between the Council and the Interior Finish Contractors Association of Delaware Valley that is effective on the date of this Agreement and for the duration of any addition, modification or renewal thereof until one party shall provide to the other written notice by certified or registered mail of intent to terminate the then-current agreement at its stated expiration that shall actually be received by the other party not later than sixty (60) days prior to the stated expiration date of that then-current Agreement.

METROPOLITAN DISTRICT COUNCIL OF
PHILADELPHIA AND VICINITY

X _RMK CONSTRUCTION CO. INC_
Insert FULL Name of Employer

_____
EDWARD CORYELL
President

X _Mark J Kramer_
X _[signature]_
Signature of AUTHORIZED
Employer Representative

X _620 DEER ROAD_
Address

X _CHERRY HILL_   _N.J._   _08034_
City            State    Zip

X _7/8/94_
Date

EXHIBIT 1

BEFORE THE
AMERICAN ARBITRATION ASSOCIATION

IN THE MATTER OF:  )
)
Metropolitan Regional Council of  )
Philadelphia and Vicinity, United  )
Brotherhood of Carpenters and Joiners of  )
of America  )
)
and  )   Case No. 14 300 1254 98 J
)
RMK Construction Co., Inc.  )
)
Grievance: Violation of the Collective  )
Bargaining Agreement  )

## OPINION AND AWARD

Before:                                       Alan A. Symonette, Esq.
                                              Impartial Arbitrator

Appearances:   Metropolitan Regional Council   Richard C. McNeill, Jr. Esq.

               RMK Construction Co., Inc.      Mark Kramer

Subject:   Payment of Wages and Fringe Benefits, Credibility, Contract
           Interpretation, Damages, Evidence.

Date of Grievance:                            June 22, 1998

Date of Hearing:                              March 12, 1999

    Statement of the Award: The grievance is sustained. The Company violated the Collective Bargaining Agreement when it performed work covered therein without making appropriate wage payments and contributions to the Union's fringe benefit funds. The Company is ordered to pay all such delinquent payments with interest and attorney's fees. In determining the amount of damages owed, the Company is ordered to provide the Council with the documentation necessary to determine the number of hours worked on the project in question. The undersigned arbitrator will retain jurisdiction for a period of three months from the date of this award. If the parties are unable to determine the hours worked within this time period, the arbitrator will determine the amount of damages based upon the evidence presented.



EXHIBIT 2

Metropolitan Regional C,     & RMK Construction Co.
Case No. 14 300 1254 98
Page 2

## INTRODUCTION AND BACKGROUND

This matter concerns a grievance that has arisen under the Agreement between the Metropolitan District Council of Philadelphia and Vicinity of the United Brotherhood of Carpenters and Joiners of America and the Interior Finish Contractors Association of Delaware Valley. The IFCA is a multi-employer association that is responsible for negotiating and administering the Collective Bargaining Agreement on behalf of certain contractors in the Philadelphia metropolitan area. The employer in this dispute is RMK Construction Co. Inc. RMK is a contractor that is headquartered in Tabernacle, NJ. There is no dispute that RMK is has been a signor to the IFCA agreement with the Union since 1994. According to the Agreement, contractor employees are required to pay applicable wage rates to and make benefit contributions on behalf of Union employees working on projects within the Union's jurisdiction.

The grievance was initiated by letter dated June 22, 1998, from Union counsel. The letter asserted that the Employer had been retained as a subcontractor at a work site in the Montgomeryville, Pennsylvania area ("the project"). In violation of the Agreement, the Company failed to pay the required wage rates and make appropriate contributions. Therefore, the Union seeks the payment of the lost wages and fringe benefit contributions. In addition the Union seeks interest and liquidated damages as well as attorneys fees and costs.

According to the Union, its representative and organizer, Mr. Rob Naughton visited the project in March and learned that the general contractor was Dav-Con Construction. Dav-Con was not a signatory party to the Agreement. At that time, there was some demolition being performed. However, it was clear that portions of the project

Metropolitan Regional C   & RMK Construction Co.
Case No. 14 300 1254 98
Page 3

would fall within the jurisdiction of the Council. Upon questioning the contractor, Mr. Naughton learned that the contractor had planned to complete much of the project on his own. He gave the contractor a list of union contractors. When he returned to the job in June, he noted that a substantial amount of interior work had been completed. This included interior finish work such as the erection of walls and drywall. There was base trim on the walls and the painters were beginning to perform their portion of the work. On the outside he noted that a canopy was being erected. This work was under the jurisdiction of the Agreement. He went onto the site and spoke to the superintendent. The superintendent stated that the work had been contracted to RMK. Two of the RMK employees were on the site. In addition, scaffolding had been erected and there was a banner with the company's name. Two of the company's employees appeared to be working on the canopy.

Mr. Naughton approached the workers. He told the workers to leave the job, that RMK needed someone from the Metropolitan Regional Council to complete the work. Mr. Naughton returned several weeks later and discovered that the work was completed. It appeared that at least 4 carpenters had performed completed the work in over 10 weeks or approximately. However when he checked on whether the MRC had been notified of the work, the evidence indicated that no one had contacted the Union as required by the Agreement nor had any contributions been made. He tried to contact RMK but no one returned his telephone call. He asked Union counsel to send the grievance letter. Again no response was received. Accordingly, the Union initiated arbitration pursuant to the rules of the American Arbitration Association.

Metropolitan Regional C...   ...l & RMK Construction Co.
Case No. 14 300 1254 98
Page 4

The undersigned was selected by the parties to serve as the arbitrator. The hearing was held on March 12, 1999 in the offices of the Association. During the hearing the Union was represented by the counsel. The owner of RMK appeared on behalf of the Company. The hearing was closed after the submission of post hearing documents and briefs.

## STATEMENT OF THE ISSUE

The parties were unable to stipulate to a statement of the issue. Rather it was proposed that the statement be of a general nature and that is whether the Employer violated the Agreement? If so, what shall the remedy be?

## SUMMARY OF THE RELEVANT PROVISIONS OF THE AGREEMENT

### ARTICLE 13
### HIRING PROCEDURES

The Contractor agrees to require membership in the Union as a condition of continued employment of all employees covered by this Agreement on the 8th day following the beginning of such employment, or the effective date of the Agreement, whichever is later. All employees must also remain a member in good standing of the Union as a condition of their continued employment.

### ARTICLE 19
### DELINQUENCY AND COLLECTION PROCEDURE

Section 1. The provisions of this Article shall apply with equal force and effect to the contributory and withholding obligations set forth in Article 5 (Joint Apprentice Committee), Article 16 (Health and Welfare Fund-Industry Advancement Program), Article 17 (Pension and Annuity Fund), Article 18 (Work Dues and Jobs Recovery Dues Checkoofs), Article 22 (Political Action Committee) and Article 26 (National Apprenticeship and Health and Safety Fund).

Section 2. All payments shall be remitted to the depository designated herein on Report Forms designated, as appropriate by the Funds or Council. ...

Metropolitan Regional Cc    & RMK Construction Co.
Case No. 14 300 1254 98
Page 5

Section 3. To the extent that an employee has not performed Covered Employment during the reporting period, the Employer shall so advise the Funds of that fact in the time and by the method otherwise provided for the remittance of contributions herein.

Section 4 (A) Except as otherwise specifically provided herein, payments not received by the 10th day following the payroll week which the Report covers shall be considered "delinquent" for purposes of the Agreement. ...

Section 5 Payments received by the Fund or Council later than ten (10) days after the due date shall incur and shall include a liquidated damages charge equal to ten percent (10%) of the gross amount due each fund or Council if submitted after the due date.

Section 6 In addition to the liquidated damages charges provided for above, the alleged failure of the Employer to make payments when due date shall subject the Employer to one or more of the following actions:

(B) The appropriate Funds and/or Council may institute formal collection proceedings that may include the institution of legal action 30 days after the Due Date against the Employer, to secure and if necessary, to compel payment of the monies described herein. In the event that an Employer is delinquent in the payment of contributions, the Employer shall pay (in addition to the principal sums due and the ten percent (10%) liquidated damages) interest calculated in accordance with ERISA, all costs of suit (including reimbursement for Fund administrative time) and attorneys' fees and costs, regardless of whether suit or other formal proceedings are instituted.

## ANALYSIS

I have reviewed all of the evidence presented including the notes of testimony and documents presented. The Union argues that RMK has breached the Collective Bargaining Agreement. There is no dispute that the type of work performed at the Montgomeryville, PA project is within the jurisdiction of the Union. There is also no dispute that the Company is a signatory party to the Agreement. As such the Agreement requires signatory Contractors to pay carpenters working on projects covered by the Agreement a certain wage rate. In addition, the employer must make certain fringe

Metropolitan Regional C        & RMK Construction Co.
Case No. 14 300 1254 9₀
Page 6

benefit contribution on behalf of those employees. The Union further argues that it is not disputed that the Employer did not use members of the Council on the Project nor did it pay the wage rates and fringe contributions as required.

The Union maintains that the Employer's statement that it was only present on the day they were confronted by Mr. Naughton is without merit. In this regard, the Union admits that the Employer's defense requires a credibility resolution. Even so, there are several factors that support the Union's argument. First, it argues that if it relies on the representation of the Company, it would be "ludicrous to believe that a general contractor would have permitted all but one day of this work to be performed by another entity, but would call in RMK for an assignment that lasted one day." The Union also argues that there is no dispute that RMK supplied scaffolding for the project. Finally RMK did not report the hours worked by the employees nor did it make any effort to document its assertions. Article 19 Section 3 of the Agreement requires reporting even though no one was worked or paid. With regard to the last point, the Union notes that it did subpoenaed the necessary documents yet as of the date of its post hearing brief, no such documents had been produced. Thus any assertion that the Employer did not perform the work should be dismissed and the grievance sustained.

With respect to the appropriate remedy, the Union contends that damages are measurable under the plain language of the Agreement. The damages involved, according to the Union should be based upon Mr. Naughton's estimate that work involved approximate 1600 person-hours of carpentry work. The Union asserts that this is probably the minimum amount of hours worked and the records reflecting that work are in the exclusive possession of the Company. Therefore, as part of the remedy, the

Metropolitan Regional C   & RMK Construction Co.
Case No. 14 300 1254 98
Page 7

Union is requesting that this arbitrator order RMK to make all its payroll books and records available to the Union for audit. If the audit reveals that additional hours were spent on the project, the damage award should be modified to meet those results.

According to the Agreement, they would have been paid $23.40 per hour of carpentry work. This multiplied by the number of person hours indicates that RMK owes the Council $37,440.00 in lost wages. In addition, and according to the Agreement, the Union asserts that the Employer owes $1,123.20 in dues and fringe contributions at the rate of $12.31 per hour. This would total $19,696.00.

The Union further asserts that since the benefit funds are subject to the provisions of the Taft-Hartley Act and ERISA, it would be entitled to interest on those contributions, certain liquidated damages, attorneys fees and costs. These procedures are also set forth in Article 19 of the Agreement. According to the Agreement such delinquent contributions are subject to liquidated damages in the amount of 10%. In addition the Employer is required to pay interest, as calculated under the Federal Code.

The Union also states that the Agreement requires additional contributions to its Political Action Committee and the Job Recovery Program at the rate of $.05 and $.25 respectively. The Union requests that the Arbitrator order payments to this fund as well.

Finally, the Union argues that the Agreement requires payment of attorney's fees and costs incurred in the collection of delinquent contributions. The Agreement provides that such fees should be paid "regardless of whether suit or other formal proceedings are instituted." According to the Union, this arbitration is a "formal proceeding" within the meaning of the Agreement. In support of its position that such fees are warranted, the

Metropolitan Regional C    & RMK Construction Co.
Case No. 14 300 1254 98
Page 8

Union submitted the awards of several previous arbitrators who have considered the issue and concluded that such remedies are appropriate.

The Employer was represented by the owner, Mr. Mark Kramer. At the hearing he admitted that his company is a signatory party to the agreement but stated that his firm never performed the work involved. He had sent two of his employees to complete the job as a favor to the customer. The only day they were on the site was the date the Mr. Naughton arrived. They left the site and never returned. They did not have any records of the work because they did not invoice the customer.

Mr. Kramer did not produce any records at the hearing nor did he produce any records to the Union in compliance with its subpoena. However, by letter dated April 8, 1999, nine days after the date the Union's post hearing brief was submitted, the Employer submitted payroll sheets for all employees of the company for the first two quarters of 1998 as well as quarterly federal tax returns. The Employer asserted that based on these returns, it only worked in the State of New Jersey in 1998. He also stated that since the work was never invoiced and the men involved had started and finished the day on a site in New Jersey, his accountant advised him not to address any tax issue with the state of Pennsylvania.

Finally, he asserts that these documents were available to the Fund's auditor Mr. Ronald Pagliarella on May 27, 1998. He indicated that everything was in order. No one produced Mr. Pagliaretta as a witness. In conclusion, the Employer asserts that the Union's assertions should be dismissed because it failed to produce any further witnesses to show that the work was performed. According to Mr. Kramer, "It might seem that Mr. Naughton is trying to make up for his lack of attention to a job site within his area, since

Metropolitan Regional C       & RMK Construction Co.
Case No. 14 300 1254 98
Page 9

he acknowledged he had not visited the site in four months even though he was aware the project was proceeding." The arbitrator therefore cannot award the Union more than $57,000 in back wages and contributions based upon the testimony of one of its own agents. Accordingly, the grievance should be denied.

There is no dispute that the Employer is a signatory party to the Agreement. In addition, the Agreement provides that Employers must pay certain prescribed wages and make contributions to certain fringe benefit accounts for all hours worked on the covered project. If the employer fails to make such payments, the Agreement provides for certain remedies to the fund. These include not only payment of the delinquent balances but also the payment of liquidated damages, interest and attorney's fees. To this extent there is no dispute that if the preponderance of the evidence establishes a breach, then the damages are warranted.

The main issue in this matter concerns specifically whether employees of RMK Construction performed the work at the Montgomeryville project. The Union carries the initial burden of establishing that the work was performed. In an effort to meet this burden, the Union presented the testimony of its representative Mr. Naughton. In summary, Mr. Naughton testified that he was aware that covered work was being performed at the project. When he arrived at the site he was informed that RMK was performing the work. He found scaffolding which belonged to the Company. He encountered two employees working there. When he returned weeks later, the work was completed. Based upon this evidence the Union concluded that RMK performed the work and did not pay the wages or make the contributions as required by the Agreement.

Metropolitan Regional C       & RMK Construction Co.
Case No. 14 300 1254 98
Page 10

    Mr. Kramer stated that employees were only on the site for one day. RMK did not perform the work. However, after the Union discovered that there may be a violation, it attempted to review the Company's records to determine the extent of the violation, if any. Yet when the Union contacted the Company, there was no response. The Company again did not provide any requested information even though the Union submitted a demand for arbitration with the American Arbitration Association and submitted a subpoena for those records.

    In addition, the Company did not submit any evidence at the hearing to show that employees of another Company performed the work. The Company did not produce any documentation or witness in support of its accusation. Only after the Union submitted its brief did the Company provide any documentation to support its contention. The documents were presented in an attempt to show that the Company did not perform any work in Pennsylvania during the first quarter of 1998 and that there was no other documentation to show that it was at the project for more than one day. Yet there is clear evidence that the work was completed. If it was not completed by RMK, it had the resources to present sufficient evidence that it did not perform the work. However, for whatever reason, it failed to do so. Therefore, I must conclude that RMK Construction violated the agreement and is liable for the payment of fringe benefits and back wages along with interest and attorney's fees.

    In addressing the amount of liability the Union has presented evidence based upon an estimate of the number of hours needed to perform the work that was completed. The Union estimated a total of 1600 hours and argues that the Company owes over $57,000 in damages excluding interest and attorney's fees. However, in the interest of meeting the

Metropolitan Regional C    & RMK Construction Co.
Case No. 14 300 1254 98
Page 11

full intent of the Agreement, the undersigned will not order the payment of damages based upon the estimated amount of hours until the Union has an opportunity to audit the Company's records. Conversely, it is not in the best interest of the Agreement if we allow this process to delay much longer. Accordingly, I shall order the Company to permit the Union to audit its records for a period of three months from the date of this award. I will retain jurisdiction for that period of time. If the issue of damages is not resolved within that time period, then I will then determine the amount of damages based upon the estimates provided in evidence during the hearing.

## AWARD

The grievance is sustained. The Company violated the Collective Bargaining Agreement when it performed work covered therein without making appropriate wage payments and contributions to the Union's fringe benefit funds. The Company is ordered to pay all such delinquent payments with interest and attorney's fees. In determining the amount of damages owed, the Company is ordered to provide the Council with the documentation necessary to determine the number of hours worked on the project in question. The undersigned arbitrator will retain jurisdiction for a period of three months from the date of this award. If the parties are unable to determine the hours worked within this time period, the arbitrator will determine the amount of damages based upon the evidence presented.

Dated: Wednesday, March 29, 2000

Alan A. Symonette, Impartial Arbitrator