BEFORE THE
AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| Metropolitan Regional Council of | ) | |
| Philadelphia and Vicinity, United | ) | |
| Brotherhood of Carpenters and Joiners of | ) | |
| America | ) | |
| | ) | |
| and | ) | Case No. 14 300 1254 98 J |
| | ) | |
| RMK Construction, Co. Inc. | ) | |
| | ) | |
| Grievance:   Violation of Collective | ) | |
| Bargaining Agreement | ) | |

**SUPPLEMENTAL AWARD REGARDING REMEDY**

On June 22, 1998 the Union in this matter filed a grievance pursuant to its

agreement with the Interior Finish Contractors Association of Delaware Valley arguing

that the Company violated the Collective Bargaining Agreement when it failed to pay

contractual wages and benefit contributions when it was retained as a subcontractor at a

work site in Montgomeryville, Pennsylvania. The Company is a signor to the IFCA

agreement.

The matter was brought to a hearing before the undersigned on March 12, 1999.

An award was subsequently issued that stated as follows:

> The grievance is sustained. The Company violated the Collective
> Bargaining Agreement when it performed work covered therein without
> making appropriate wage payments and contributions to the Union's
> fringe benefit funds. The Company is ordered to pay all such delinquent
> payments with interest and attorney's fees. In determining the amount of
> damages owed, the Company is ordered to provide the Council with the
> documentation necessary to determine the number of hours worked on the
> project in question. The undersigned arbitrator will retain jurisdiction for
> a period of three months from the date of this award. If the parties are

EXHIBIT
4

unable to determine the hours worked within this time period, the arbitrator will determine the amount of damages based upon the evidence presented.

On May 11, 2000 approximately two months after the award was issued, the Union notified the arbitrator, through the American Arbitration Association stating that "the parties have been unable to determine the hours worked in violation of the contract or the appropriate damages. Accordingly, the MRC herby invokes Arbitrator Symonette's retention of jurisdiction in the matter."

After several attempts to resolve the matter and attempt to schedule a hearing, one was conducted on August 1, 2001. During the hearing, the Union asserted that the Company did not allow it to audit any records to determine the appropriate number of hours worked. The Company stated that it would not present any evidence and an audit was conducted. The Union denied this.

In the initial hearing, the Union formulated a list of damages based upon an estimate on the number of hours worked and the amount to be paid based upon the language set forth in Article 19 of the Agreement regarding the Delinquency and Collection Procedure. This included the formula for the payment of liquidated damages, attorney's fees and interest. Given the fact that the employer has the documentation necessary to determine the exact number of hours worked, it is appropriate that it carry the burden in showing the correct amount of damages owed. If the employer is unable to meet that burden, then the Arbitrator has no alternative but to accept the estimates provided by the Union.

In this case, the employer did not provide any evidence showing its estimate of the number of hours worked. The employer's owner appeared at the hearing and stated

that an audit took place but again did not provide any evidence showing the result of the audit or any detail of the hours owed.[1]  The Union maintained that no audit took place. When questioned, the owner could not produce the name of the auditor, the date of the audit or its result.  The Union relied upon the testimony submitted in the original hearing as well as its account of damages as submitted in its brief.

Based upon this evidence, I must conclude that the Employer failed to meet its burden of showing an accurate account of the wages owed pursuant to the Agreement. Given its failure to provide any evidence, this arbitrator has no choice but to rely upon the Union's estimate that the amount owed should reflect 1600 person-hours at the rate of $23.40 per hour.  According to Article 19 the Employer shall be considered "delinquent" for purposes of the Agreement.  The Employer also owes $1,123.20 in dues and fringe contributions at the rate of $12.31 per hour.  The Employer must also pay related liquidated damages in the amount of 10% of the gross amount due, interest calculated in accordance with ERISA, the costs of this arbitration, and attorneys' fees and costs.

---

[1]  In the hearing on the merits of this case, the owner failed to provide any evidence even though his records were subpoenaed by the Union.

## AWARD

Based upon the evidence presented, the Employer is "delinquent" in wage payments as set forth in Article 19 of the Collective Bargaining Agreement to the extent of 1600 person-hours at the contractual wage rate of $23.40 per hour.  The Employer also owes dues and fringe contributions at the rate of $12.31 per hour.  In addition the Employer shall pay all liquidated damages, interest calculated in accordance with ERISA, costs of this arbitration, attorneys' fees and costs in accordance with Article 19 of the Agreement

Dated: Thursday, August 23, 2001

Alan A. Symonette, Arbitrator
Philadelphia, Pennsylvania

4

```
1          IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2
   METROPOLITAN REGIONAL   :
3  COUNCIL OF PHILADELPHIA
   AND VICINITY, UNITED
4  BROTHERHOOD OF CARPENTERS
   AND JOINERS OF AMERICA
5
         vs.
6
   RMK CONSTRUCTION
7  COMPANY, INC.          :   No. 01-CV-6070

8                        - - -

9
               Philadelphia, Pennsylvania
10               May 30, 2002

11                      - - -

12            Pretrial examination of

13  MARK KRAMER, held at the Offices of

14  Jennings Sigmond, 510 Walnut Street,

15  16th Floor, on the above date, commencing

16  at or about 10:15 a.m., before Marybeth

17  Kennedy, Certified Court Reporter and

18  Notary Public.

19

20            KAPLAN, LEAMAN AND WOLFE
21       Registered Professional Reporters
          The Bourse Building - Suite 970
22       Philadelphia, Pennsylvania 19106
              (215) 922-7112
23

24
```

EXHIBIT

5

```
1

2

3
     APPEARANCES:
4
     JENNINGS SIGMOND
5     BY:  SANFORD ROSENTHAL, ESQUIRE
      510 Walnut Street, 16th Floor
6     Philadelphia, Pennsylvania 19106

7     Counsel for the Plaintiff

8
      BERKOWITZ & ASSOCIATES, PC
9     BY:  SUSAN WALL, ESQUIRE
      One Greentree Centre, Suite 201
10    Marlton, New Jersey 08053

11    Counsel for the Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
1                        I N D E X

2    WITNESS                                    PAGE

3    MARK KRAMER

4         BY MR. ROSENTHAL                         4

5

6                      E X H I B I T S

7    NO.              DESCRIPTION              PAGE

8    Plaintiff 1    notice of deposition       8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

M. Kramer

```
1              -   -   -

2         (It is hereby stipulated by and

3    between counsel that the reading and

4    signing, sealing, certification and filing

5    of the within deposition are hereby waived;

6    all objections, except as to the form of

7    the question, are reserved until the time

8    of trial.)

9              -   -   -

10            MARK KRAMER, having been duly

11       sworn, was examined and testified as

12       follows:

13            -   -   -

14            EXAMINATION

15            -   -   -

16   BY MR. ROSENTHAL:

17   Q.         Good morning, Mr. Kramer.  My

18   name is Sanford Rosenthal.  I'm an attorney

19   with the Law Firm of Jennings Sigmond.  We

20   represent the Metropolitan Regional Council

21   of Philadelphia and Vicinity in a case that

22   was brought against RMK Construction

23   Company in the United States District Court

24   for the Eastern District of Pennsylvania,
```

M. Kramer

1    A.        Okay.

2    Q.        If at any time you need to take a

3    break, let me know.  We will try to

4    accommodate you.

5            We have coffee here.  I think

6    there's water here.  If you want tea, soda,

7    whatever, we'll try to accommodate you.

8    Okay?

9    A.        Yes.

10   Q.        Do you understand everything so

11   far?

12   A.        Yes, sir.

13   Q.        If you could state your full name

14   and address for the record.

15   A.        My full name is Mark King

16   Kramer.  I live at 401 Winding Way,

17   Hammonton, New Jersey.

18   Q.        Mr. Kramer, are you familiar with

19   a company called RMK Construction Company,

20   Incorporated?

21   A.        Yes, sir.

22   Q.        Were you an officer of that

23   company?

24   A.        Yes, sir.

M. Kramer

1   Q.          Do you know if he is still

2   practicing law?

3   A.          I don't know.  He was working for

4   an insurance company at one time.  And I

5   heard he may be back in private practice.

6   Q.          Did RMK Construction have regular

7   meetings of its board of directors?

8   A.          I'm not sure what you mean by,

9   "regular meetings of board of directors."

10  There were only two people involved in the

11  ownership.

12  Q.          Who were the two people?

13  A.          Myself and Robert Rickabaugh.

14  Q.          Were you an officer of the

15  company?

16  A.          Yes, sir.

17  Q.          What office did you hold?

18  A.          President.

19  Q.          Mr. Rickabaugh, was he an officer

20  of the company?

21  A.          He was vice president.

22  Q.          Was he active in the operations

23  of the company?

24  A.          Yes.